UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SELINA HAYES,

                              Plaintiff,

            v.

HORIZON VILLAGE, INC.,

                           Defendant.
_____

|  |
|---|
| **REPORT**<br>**and**<br>**RECOMMENDATION**<br>----------------------------<br>**DECISION**<br>**and**<br>**ORDER**<br><br>**24-CV-882-JLS(F)** |

APPEARANCES:        J.S. FRITZSON LAW FIRM P.C.
                            Attorneys for Plaintiff
                            JOSEPH FRITZSON, of Counsel
                            1979 Marcus Avenue
                            Suite 210
                            Lake Success, New York  11042

                            BOND SCHOENECK & KING, PLLC
                            Attorneys for Defendant
                            TRAVIS R. TALERICO, of Counsel
                            350 Linden Oaks
                            3rd Floor
                            Rochester, New York  14625
                                      and
                            PAUL JOSEPH BUEHLER, III, of Counsel
                            22 Corporate Woods Boulevard
                            Suite 501
                            Albany, New York  12211

## <u>JURISDICTION</u>

This case was referred to the undersigned by Honorable John L. Sinatra, Jr., on

December 3, 2024, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  Dkt. 12.  The matter is presently before the

court on Defendant's Motion to Dismiss (Dkt 11), filed December 2, 2024, and Plaintiff's

Motion to Amend the Complaint (Dkt. 14), filed January 10, 2025.[1]

## BACKGROUND

Plaintiff Selina Hayes ("Plaintiff"), commenced this employment discrimination

action on September 18, 2024, alleging violations of the Age Discrimination in

Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA"), the Americans with

Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), and New York State Human Rights

Law, N.Y. Exec. Law § 290 *et seq*. ("NYSHRL"), against Plaintiff's former employer

Horizon Village, Inc. ("Defendant").  Plaintiff asserts four claims for relief including

discrimination, including disparate treatment and hostile work environment, based on

age in violation of the ADEA, Complaint, First Cause of Action ("First Claim"), retaliation

in violation of the ADEA, *id*., Second Cause of Action ("Second Claim"), disability

discrimination in violation of the ADA, *id*., Third Cause of Action ("Third Claim"), and age

and disability discrimination, hostile work environment, and retaliation in violation of

NYSHRL, *id*., Fourth Cause of Action ("Fourth Claim").  Defendant did not file an

answer, but instead moved on December 2, 2024, pursuant to Fed.R.Civ.P. 12(b)(6)

("Rule 12(b)(6)"), to dismiss the Complaint for failing to state a claim upon which relief

can be granted (Dkt. 11) ("Defendant's motion"), supported by the attached Defendant's

Memorandum of Law in Support of Motion to Dismiss (Dkt. 11-1) ("Defendant's

Memorandum").

---

[1] Because the motion to dismiss is dispositive, but the motion to amend is non-dispositive, both motions are addressed in this combined Report and Recommendation and Decision and Order.

On January 10, 2025, Plaintiff filed a cross-motion seeking leave to file an amended complaint (Dkt. 14) ("Plaintiff's motion"), attaching the Affirmation of Joseph S Fritzson[, Esq.,][2] (Dkt. 14-1) ("Fritzson Affirmation"), and Plaintiff Selina Hayes's Memorandum of Law in Support of Cross-Motion to Amend the Complaint and in Opposition to Defendant Horizon Village, Inc.'s Motion to Dismiss (Dkt. 14-2) ("Plaintiff's Memorandum"), with exhibits A through D (Dkts. 14-3 through 14-6) ("Plaintiff's Ex(s). __"). Plaintiff's proposed amended complaint ("PAC") is filed as Plaintiff's Exh. D (Dkt. 14-6). On January 24, 2025, Defendant filed Defendant's Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss (Dkt. 16) ("Defendant's Reply"), and Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion to Amend Complaint (Dkt. 17) ("Defendant's Response"). On January 31, 2025, Plaintiff filed Plaintiff Selina Hayes's Memorandum of Law in Reply to Defendant Horizon Village, Inc.'s Opposition to Plaintiff Selina Hayer's Cross-Motion to Amend the Complaint (Dkt. 19) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Defendant's Motion should be GRANTED; Plaintiff's Motion should be GRANTED.


**FACTS**[3]

Plaintiff Selina Hayes ("Plaintiff" or "Hayes"), born in 1964, commenced employment with Defendant Horizon Village, Inc. ("Defendant" or "Horizon"), on November 15, 2021, working as a Food Service Cook until June 2, 2024 on which date

---

[2] Unless otherwise indicated, bracketed material has been added.

[3] Taken from the pleadings filed in this action.

Plaintiff maintains she was constructively discharged.  According to Plaintiff, throughout her employment with Horizon she was subjected to disparate treatment based on her age including Food Service Coordinator Lydia Taylor ("Taylor"), stating in Plaintiff's presence that Taylor "can hit an old person," and later questioning Plaintiff about her age and whether she was able to retire.  Complaint ¶ 7.  On September 29, 2023, Taylor directed other age-based comments toward Plaintiff including that "cookies are for old people," and "Can you believe they tried to give me Medicare?  That's for old people."  *Id*.  Following numerous additional, but unspecified, age-related instances of discrimination, on June 28, 2023, Plaintiff filed a complaint ("internal complaint") with Construction Manager Tom Decker ("Decker"), who took no action in response to the internal complaint.  On June 29, 2023, during a meeting attended by Plaintiff and Decker in which Plaintiff expressed displeasure with the lack of assistance she received in the kitchen, Food Service Manager Judy Rozicki ("Rozicki") interrupted "by charging in, yelling at Plaintiff, and pointing a finger directly at Plaintiff's face, blaming Plaintiff for the asserted lack of kitchen assistance.  Despite observing Rozicki's behavior, Decker did not take any action to reprimand or discipline Rozicki.

Following her internal complaint regarding age discrimination, on August 1, 2023, Defendant reduced Plaintiff's hours of employment such that Plaintiff regularly worked only 70 hours per pay period as compared to Taylor and Camilla Sweat ("Sweat"), a younger employee.[4]  On September 18, 2023, Defendant disclosed to an unidentified employee Plaintiff's private medical information, specifically, that Plaintiff had tested positive for COVID-19.  Upon returning to the workplace after complying with the

---

[4] The Complaint does not allege any age for Taylor or Sweat, nor whether Taylor is younger than Plaintiff.

COVID-19 isolation protocol, Sweat screamed at Plaintiff after Plaintiff's face-mask slipped and, rather than diffusing the situation, Taylor laughed and clapped. At a September 23, 2023 weekly supervision meeting, Rozicki revealed that Defendant had informed one person in every department of Plaintiff's COVID-19 status.

On October 23, 2023, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC charge") complaining about age discrimination and harassment Plaintiff alleges she endured by Defendant. Plaintiff alleges that after filing the EEOC charge, she was assigned work projects that were significantly greater than those Plaintiff previously assigned. According to Plaintiff, Defendant, to intimidate Plaintiff, arranged for Plaintiff to be in the same room as Defendant's attorney without advising Plaintiff she would be meeting and speaking with the attorney. *Id*. On February 7, 2024, Plaintiff filed a police report with the Buffalo Police Department ("Buffalo Police") reporting Taylor and Sweat were bullying her and threatening Plaintiff with physical harm.

Defendant forced Plaintiff to participate in mediations with employees who previously threatened or harassed Plaintiff in the workplace. At a mediation on April 19, 2024, Taylor raised her voice and continuously cut off Plaintiff and then proceeded to further antagonize Plaintiff by arranging for Rozicki, whose employment was terminated earlier that year,[5] to appear and participate in the mediation via "facetime." Complaint ¶ 13. After the April 19, 2024 mediation, Plaintiff filed a second police report with the Buffalo Police regarding Taylor's actions which Plaintiff considered threatening. Plaintiff's complaints, including concerns about her safety, were never addressed, and

---

[5] No reason for Rozicki's termination from Horizon is alleged.

Plaintiff was warned that she would be terminated if she failed to participate in the mediations.

On May 24, 2024, Plaintiff discovered that someone had accessed her e-mail account and drafted in Plaintiff's name an e-mail to one Veronica Meldrum ("Meldrum"), an employee of Horizon, regarding the scheduling of a meeting.[6]  Complaint ¶ 14. Plaintiff alleges that following her filing of the EEOC charge, Defendant "fostered a hostile work environment," that caused Plaintiff to fear for her physical and emotional well-being.  *Id*. ¶ 15.  Plaintiff further maintains that on June 2, 2024, she was constructively discharged from her employment with Horizon.

## DISCUSSION

### 1. Motions to Dismiss

Defendant's motion seeks, pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") to dismiss the Complaint for failure to state a claim with regard to all but Plaintiff's retaliation claims.  A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting longstanding precedent of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  As such, the Supreme Court requires application of "a 'plausibility standard . . . .'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 570, and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is

---

[6] Plaintiff does not allege whether the subject e-mail account was Plaintiff's work or personal e-mail account, nor does Plaintiff further describe the contents of the e-mail or its relevance to this action.

required to accept the plaintiff's nonconclusory allegations as true and to construe those allegations in the light most favorable to the plaintiff.  *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'  *Id.* (quoting *Twombly*, 550 U.S. at 557)

"[A] Rule 12(b)(6) motion is addressed to the face of the pleading."  *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985).  "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]."  *Trustees of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,

843 F.3d 561, 566 (2d Cir. 2016).  "While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  Further, Applying the standard for a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) "is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *In re Amaranth Natural Gas Commodities Litigation*, 730 F.3d 170, 80 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

In support of dismissal, Defendant argues with respect to Plaintiff's age-based employment discrimination claims – Plaintiff's First and Fourth Claims – that Plaintiff's allegations do not include any adverse employment actions, Defendant's Memorandum at 6-9, and the alleged conduct to which Plaintiff claims she was subjected fails to create an inference of age-based discrimination.  *Id*. at 9-11.  Defendant also contends Plaintiff's Third Claim does not state an actionable claim of disability-based employment discrimination because COVID-19 is not a qualified disability, *id*. at 11-13, and Plaintiff has not alleged any tangible injury attributable to Defendant's disclosure of Plaintiff's COVID-19 diagnosis, *id*. at 13-15.  Defendant further argues Plaintiff has not alleged sufficient facts to support her hostile work environment claims also asserted in her First and Fourth Claims.  *Id*. at 15-18.  Defendant does not seek dismissal of Plaintiff's Second Claim alleging retaliation in violation of the ADEA.  In opposition to Defendant's motion, Plaintiff filed her motion to file an amended complaint, Plaintiff's Memorandum

at 4-6, and disputes that Plaintiff has not suffered an adverse employment action particularly with respect to her retaliation claim. *Id*. at 7-12.

In further support of dismissal, Defendant argues Plaintiff is not permitted to raise new allegations in opposing Defendant's motion, Defendant's Reply at 2-3, the court should not consider the unemployment insurance decision submitted in support of Plaintiff's motion (Plaintiff's Exh. B) (Dkt. 14-4), *id*. at 3-5, Plaintiff fails to oppose most of Defendant's arguments in support of dismissal and thus has abandoned her claims relating to such arguments, *id*. at 5-6, and Plaintiff has failed to state a claim for age-based employment discrimination. *Id*. at 7-10. In opposition to Plaintiff's motion to amend, Defendant argues Plaintiff seeks to allege new facts that she could have alleged in the original Complaint, Defendant's Response at 3-5, and the proposed amendments are futile. *Id*. at 5-6. In further support of her motion to amend, Plaintiff argues that in opposing Plaintiff's motion, Defendant overlooks critical facts and makes conclusory arguments particularly with regard to the unemployment insurance decision which was not rendered until after Plaintiff commenced this action, Plaintiff's Reply at 4-5, and facts establishing Plaintiff's constructive discharge claim. *Id*. at 6.

## 2. Disability-based Employment Discrimination

Preliminarily, the court addresses Defendant's argument, Defendant's Memorandum at 13-15, that Plaintiff's disability-based employment discrimination claim must be dismissed because a COVID-19 diagnosis does not qualify as a disability under the ADA or the NYSHRL, as required. It is significant that Plaintiff has not responded in opposition to this argument.

To state an employment discrimination claim under the ADA, the Plaintiff must allege (1) the employer is subject to the ADA; (2) the plaintiff suffers from a disability within the meaning of the ADA; (3) the plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) the plaintiff suffered an adverse employment action because of his disability. *Sista v. CDC Ixis N. Am. Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  "The NYSHRL similarly prohibits employers from discharging or discriminating against individuals "in terms, conditions, or privileges of employment" because of an individual's disability."  *Cilus v. NYU Langone Hospitals*, 2025 WL 2663112, at * 6 (S.D.N.Y. Sept. 17, 2025) (citing N.Y. Exec. Law § 296).  "'A claim of disability discrimination under the [NYSHRL] . . . is governed by the same legal standards as govern federal ADA claims.'"  *Tafolla v. Heilig*, 80 F.4th 111, 119 (2d Cir. 2023) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006)).  Accordingly, the court analyzes the sufficiency of Plaintiff's disability-based employment discriminations claims under the ADA and NYSHRL together.

In the instant case, the only asserted disability alleged in the Complaint is that Plaintiff was diagnosed with COVID-19.  Complaint ¶¶ 11, 30, 37.  As relevant here, however, neither having a COVID-19 viral infection nor being regarded as having COVID-19 is a cognizable disability under the ADA or the NYSHRL.  *See Vasquez v. City of New York – Officer of Mayor*, 2024 WL 1348702, at * 4 (E.DN.Y. Mar. 30, 2024) (being "regarded as" having COVID-19 is not cognizable under the ADA); *DeJesus v. Bon Secours Community Hospital*, 2024 WL 554271, at * 9 (S.D.N.Y. Feb. 12, 2024) (finding the plaintiff failed to establish a disability based on COVID-19 infection where her only associated symptoms were "feeling achy" and a headache); *Drepaul v. Wells*

*Fargo Bank, N.A.*, 2024 WL 127402, at ** 4-5 (D.Conn. Jan. 11, 2024) (holding the plaintiff, who was sick with COVID-19 for one month, the symptoms of which included body aches, coughing, chills, headaches, lightheadedness, loss of taste and smell, and brain fog, did not suffer from a disability as defined under the ADA).  Rather, "[t]he EEOC, which is charged with enforcing the ADA and other employment discrimination laws, has addressed the extent to which COVID-19 amounts to a disability: 'A person infected with the virus causing COVID-19 who is asymptomatic or a person whose COVID-19 results in mild symptoms similar to those of the common cold or flu that resolve in a matter of weeks - with no other consequences - will not have an actual disability within the meaning of the ADA.'"  *Drepaul*, 2024 WL 127402, at * 4 (quoting *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws,* at N.2 *When is COVID-19 or Long COVID an actual disability under the ADA*? (Updated 5/15/23)).  In contrast, "the EEOC guidance goes on to discuss other circumstances in which COVID-19 or "Long COVID" may amount to a disability – for example, "[a]n individual diagnosed with COVID-19 who experiences ongoing but intermittent multiple-day headaches, dizziness, brain fog, and difficulty concentrating, which the employee's doctor attributes to the virus, is substantially limited in neurological and brain function, concentrating, and/or thinking, among other major life activities" and "[a]n individual diagnosed with COVID-19 who initially receives supplemental oxygen for breathing difficulties and has shortness of breath, associated with fatigue, and other virus-related effects that last, or are expected to last, for several months, is substantially limited in respiratory function, and possibly major life activities including exertion, such as walking," may establish a disability for purposes of the ADA

and NYSHRL.  *Drepaul*, 2024 WL 127402, at *4 (quoting *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, at N.4 *What are some examples of ways in which an individual with COVID-19 might or might not be substantially limited in a major life activity?* (Updated 5/15/2023)).  In contrast, "[a]n individual who is diagnosed with COVID-19 who experiences congestion, sore throat, fever, headaches, and/or gastrointestinal discomfort, which resolve within several weeks, but experiences no further symptoms or effects ... does not have an actual disability under the ADA."  *Id*.  Because the EEOC bears responsibility for implementing the ADA, courts generally defer to the EEOC's regulations in construing the ADA.  *Id*. (citing *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir. 2001)).  Additionally, as stated above, Discussion, *supra*, at 10, the Second Circuit construes disability claims under the NYSHRL according to the same standards governing ADA claims.  *Tafolla*, 80 F.4th at 119.

Here, Plaintiff does not allege she suffered with a COVID-19 infection for more than one month.  Further, insofar as Plaintiff alleges Defendant "wrongfully disclosed Plaintiff's private medical information" by sharing with other employees that Plaintiff had a positive COVID-19 test result, Complaint ¶ 11, "whether a particular examination or inquiry falls within [the ADA] depends on whether it 'may tend to reveal a disability.'" *Medlin v. Rome Strip Steel Co.*, 294 F. Supp. 2d 279, 294 (N.D.N.Y. 2003) (quoting *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 95 (2d Cir. 2003)).  Because a temporary COVID-19 viral infection is not a recognized disability under the ADA or NYSHRL, Plaintiff's employer did not violate any ADA or NYSHRL confidentiality

requirement by revealing Plaintiff's COVID-19 status to others in the workplace.[7]  *Niles v. New York City Human Resources Administration*, 2024 WL 496346, at * 10 (E.D.N.Y. Feb. 8, 2024).  Defendant's motion should be GRANTED with regard to Plaintiff's disability-based employment discrimination claims under the ADA and NYSHRL, Claim Three and Claim Four (in relevant part).

### 3.  Age-based Employment Discrimination

Plaintiff alleges age-based employment discrimination claims under the ADA and NYSHRL including disparate treatment and hostile work environment claims. Complaint, First Claim (ADEA), and Fourth Claim (NYSHRL).  Disparate treatment and hostile work environment claims are subject to different analyses.

### A.  Disparate Treatment

"Age discrimination claims brought under the ADEA and NYSHRL are governed by the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S 792, 402-04 (1973)."  *McGuire-Welch v House of the Good Shepherd*, 720 Fed.Appx. 58, 59 (2d cie. 2018) (citing cases).  *See also Carr v. New York City Transit Auth.*, 76 F.4th 172, 177 (2d Cir. 2023) (ADEA); *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016) (NYSHRL).  In particular, "the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination."  *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (internal quotation omitted).  Upon such a showing, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for its action."  *Id.* (internal quotation omitted).  If the defendant proffers such a reason,

---

[7] Under both the ADA and NYSHRL, information regarding an employee's disability must be maintained as a confidential medical record.  *See* 29 C.F.R. § 1630.14(c)(1) (regulation interpreting the ADA requiring confidentiality), N.Y. Exec. Law § 296[3](d) (NYSHRL requiring confidentiality).

"the presumption raised by the *prima facie* case is rebutted and drops from the case,"
*Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d at 136 (internal quotation
omitted), and the burden then shifts back to the plaintiff to "prove that the employer's
proffered reason was a pretext for discrimination."  *McPherson v. N.Y.C. Dep't of Educ.*,
457 F.3d 211, 215 (2d Cir. 2006).  In determining whether the reason is mere pretext for
discrimination, "the trier of fact may still consider the evidence establishing the plaintiff's
prima facie case and inferences properly drawn therefrom on the issue of whether the
defendant's explanation is pretextual."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530
U.S. 133, 143 (2000) (internal quotation and alteration omitted).  To carry her ADEA
pretext burden, the plaintiff must prove age was the "but-for" cause of the challenged
employment action, *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir.
2010), although the Second Circuit instructs that "the less rigorous 'motivating factor'
standard" applies to age discrimination claims under the NYSHRL.  *Tyson v. Town of
Ramapo*, 2024 WL 2890395, at * 1 (2d Cir. 2024) (citing *Vega v. Hempstead Union
Free Sch. Dist.*, 801 F.3d 72, 85-86 (2d Cir. 2015)).

To state a claim for employment discrimination based on disparate treatment in
violation of the ADEA or NYSHRL, Plaintiff must allege (1) she belonged to a protected
class; (2) she was qualified for her position; (3) she was subjected to an adverse
employment action; and (4) the adverse employment action occurred under
circumstances giving rise to an inference of discrimination.  *Terry v. Ashcroft,* 336 F.3d
128, 137-38 (2d Cir. 2003) (citing *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 168 (2d
Cir.2001) (ADEA).  *See Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.
2001) ("[A]ge discrimination suits brought under the [NYSHRL] are subject to the same

analysis as claims brought under the ADEA.").  In the instant case, Defendant does not

argue that Plaintiff, who was born in 1964, belonged to a protected class of age for the

purposes of both the ADEA and NYSHRL, or that Plaintiff was qualified for her position;

rather, Defendant argues that Plaintiff was not subjected to any adverse employment

action insofar as Plaintiff does not allege she suffered a change in compensation,

benefits, job title, or other terms and conditions of employment.  Defendant's

Memorandum at 6-9.  In opposition, Plaintiff identifies adverse employment actions to

which she was subjected, the reduction in the hours she worked after filing the internal

complaint, Plaintiff's Memorandum at 9, the assignment of greater tasks following the

filing of her EEOC charge, *id*. at 12, and the threats of violence that caused Plaintiff to

fear for her physical and emotional safety and well-being and led to Plaintiff's

constructive discharge.[8]  *Id*.  In further support of dismissal, Defendant argues the

asserted adverse employment actions to which Plaintiff maintains she was subjected

were not because of Plaintiff's age but, rather, because Plaintiff engaged in alleged

protected activity, *i.e.*, the filing of the internal complaint and the EEOC charge, and

thus the adverse employment actions are relevant only to Plaintiff's retaliation claims.

Defendant's Reply at 8-9.[9]

An "adverse employment action" refers to "a 'materially adverse change' in the

terms or conditions of employment."  *Galabya v. New York City Board of Education,* 202

F.3d 636, 640 (2d Cir.2000) (citing cases).  "To be 'materially adverse' a change in

---

[8] The record is ambiguous as to whether these alleged threats came from someone with supervisory or managerial authority over Plaintiff, and Defendant does not address the issue.

[9] Defendant argues, Defendant's Memorandum at 9-10, and Plaintiff does not dispute, that Plaintiff's alleged constructive discharge is properly considered in connection with Plaintiff's hostile work environment claim, rather than Plaintiff's disparate treatment claim.

working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Id.* (quoting *Crady v. Liberty National Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993).  Examples of such "materially adverse change" include "'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"  *Id.*

Here, although Plaintiff's reduction in hours, accompanied by a decrease in pay, may constitute an adverse employment action, *Galabya,* 202 F.3d at 640 (decrease in pay is a materially adverse employment action), Plaintiff concedes that such action was taken to retaliate against Plaintiff for filing the internal complaint, and the subsequent unequal distribution of work assignments and constructive discharge began after Plaintiff filed the EEOC charge.  Plaintiff's Memorandum at 8-11.  See *Lonergan-Milligan v. New York State Office of Mental Health*, 2018 WL 6605686, at * 5 (W.D.N.Y. Dec. 17, 2018) ("'Constructive discharge is considered an adverse employment action sufficient to support a retaliation claim.'" (quoting *Valleriani v. Route 390 Nissal LLC*, 41 F.Supp.3d 307, 320 (W.D.N.Y. 2014))).  Because the adverse actions do not support Plaintiff's age-based employment discrimination claims based on disparate treatment but, rather, only her retaliation claims, a reasonable jury could not find materially adverse any of the employment actions on which Plaintiff relies to establish the third prong of her age-based disparate treatment employment discrimination claims such that Defendant's motion should be GRANTED as to the First and Fourth Claims insofar as they allege disparate treatment in employment.

### B. Hostile Work Environment

Although not a separately denominated claim, Plaintiff alleges in her First and Fourth Claims that, based on her age, she was constructively discharged from her employment with Defendant, in other words, that Plaintiff was subjected to a work environment that was so hostile as to cause Plaintiff to resign.  Complaint, First and Fourth Claims.  In support of Defendant's motion seeking to dismiss Plaintiff's hostile work environment claims, Defendant argues Plaintiff has failed to allege conduct sufficient to establish a hostile work environment under the ADEA, or under the NYSHRL's less exacting standard.  Defendant's Memorandum at 15-18.  In opposition to dismissal, Plaintiff argues it is clearly alleged in the Complaint that "Plaintiff's constructive discharge stemmed from 'a hostile work environment that resulted in Plaintiff fearing for her physical and emotional wellbeing following the filing of her [EEOC] Charge of Discrimination.'"  Plaintiff's Memorandum at 12 (quoting Complaint ¶ 15).  In further support of dismissal, Defendant maintains that the Complaint fails to tie the alleged hostile conduct to Plaintiff's protected characteristic, her age, Defendant's Reply at 9, and the referenced allegation pertains not to Plaintiff's hostile work environment claim but, rather, to Plaintiff's retaliation claim.  *Id.* at 9-10.

Hostile work environment claims brought under the ADEA and NYSHRL are analyzed under the same framework.  *Palumbo v. Carefusion 2200, Inc.*, 2014 WL 3921233, at * 14 (W.D.N.Y. Aug. 11, 2014) (citing *Preuss v. Kolmar Labs., Inc.,* 970 F.Supp.2d 171, 184 n. 14 (S.D.N.Y.2013) ("ADEA and NYSHRL claims for hostile work environment are analyzed under the same standards . . . .").  Further, the criteria for establishing a disparate treatment claim which employs the *McDonnell Douglas* burden

shifting analysis, are different than those for a hostile work environment claim which does not.  *See Reynolds v. Barrett,* 685 F .3d 193, 202 (2d Cir.2012) (recognizing distinction between *McDonnell Douglas* burden-shifting framework and hostile work environment analysis). *See also Nichols v. Volunteers of America, North Alabama, Inc.,* 470 Fed.Appx. 757, 766 & n. 1 (11th Cir. Apr. 18, 2012) (citing cases comparing elements of hostile work environment claim, with discrimination elements and retaliation elements under *McDonnell Douglas* ).  "To make out a *prima facie* case for hostile work environment, a plaintiff must show that [s]he is a member of a protected class and that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment.'"  *Palumbo*, 2014 WL 3921233, at * 14 (quoting *Preuss,* 970 F.Supp.2d at 184 (quoting *Francis v. Elmsford Sch. Dist.,* 263 Fed.Appx. 175, 177 (2d Cir.2008))).

"An actionable discrimination claim based on hostile work environment under the ADEA is one for which 'the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment . . . .'"  *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (quoting *Brennan v. Metro. Opera Ass'n,* 192 F.3d 310, 318 (2d Cir.1999) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993))).  "The determination of hostility depends on whether a reasonable person would find the work environment to be hostile and whether plaintiffs subjectively perceived it to be so."  *Id*. (citing *Brennan*, 192 F.3d at 318).  "A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class."  *Id*. (citing *Brennan,* 192 F.3d 310 at 318).  Nevertheless, "[m]inor incidents do not merit relief."  *Id*.  To state a claim

for hostile work environment, "plaintiffs need not plead a *prima facie* case of discrimination based on hostile work environment, so long as they provide in the complaint a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendant fair notice of plaintiffs' claim for hostile work environment and the grounds upon which that claim rests." *Id*., 496 F.3d at 241.

Here, the allegations fail to state a hostile work environment because the scant comments Plaintiff maintains were directed toward Plaintiff because of her age, including comments by Taylor, who may be Plaintiff's supervisor, *see* n. 8, *supra*, at 15, that Taylor "can hit an old person," Complaint ¶ 7, "cookies are for old people," *id*., asserting that Medicare is "for old people," *id*., and inquiring whether Plaintiff was able to retire, *id*., are too vague and infrequent to support a finding that a reasonable person would subjectively perceive the comments as hostile to Plaintiff based on her age. *See, cf., Kassner*, 496 F.3d at 241 (finding repeated comments by manager directing to Plaintiff including, "drop dead," "retire early," "take off all that make-up," and "take off your wig," sufficiently alleged the workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment . . . ." (quoting *Brennan*, 192 F.3d at 318)). Although one of the comments Plaintiff attributes to Taylor inquires as to whether Plaintiff was eligible to retire, such inquiry alone does not allege that Taylor was pressuring Plaintiff to retire. *See Kassner*, 496 F.3d at 241 (allegation that co-worker pressured the plaintiff to retire was too vague to provide defendants with fair notice of factual grounds supporting age-based hostile work environment claim). Furthermore, with regard to the alleged conduct during the mediation sessions in which Plaintiff was required to participate, and which

Plaintiff maintains was so antagonistic toward Plaintiff as to cause Plaintiff to file police reports, Complaint ¶ 13, and Plaintiff's constructive discharge claim is alleged with regard to her hostile work environment claims under the ADA and NYSHRL, Complaint ¶¶ 19, 38, a fair reading of the Complaint establishes such conduct did not contribute to a hostile working environment based on Plaintiff's age but, rather, allegedly occurred in connection with Plaintiff's retaliation claim as it pertains to mediation of Plaintiff's EEOC charge.  Complaint ¶ 13.  *See Van Denburgh v. New York*, 2025 WL 2483415, at * 22 (N.D.N.Y. Aug. 28, 2025) ("[C]onstructive discharge is recognized as an adverse employment action in the context of a retaliation claim." (citing *Luzunaris v. Baly Cleaning Servs.*, 2024 WL 3926708, at * 21 (S.D.N.Y. July 29, 2024))); *Lonergan-Milligan*, 2018 WL 6605686, at * 5.

Defendant's motion thus should be GRANTED as to Plaintiff's hostile work environment claims under both the ADEA and NYSHRL.

### 4.  Retaliation

Plaintiff's Second Claim alleges retaliation in violation of the ADEA, while her Fourth Claim includes a retaliation claim in violation of NYSHRL.  In opposing Defendant's motion, Plaintiff filed a cross-motion for leave to file an amended complaint, and the attached PAC contains additional factual allegations relevant only to Plaintiff's retaliation claims.  Plaintiff argues the additional factual allegations in the PAC establish that after filing her internal complaint and the EEOC charge, Defendant retaliated against Plaintiff by assigning her to fewer hours of work and greater tasks than those to which Plaintiff previously was assigned, and caused Plaintiff's constructive discharge. Plaintiff's Memorandum at 4-13.

Like disparate treatment claims, retaliation claims are subject to the *McDonnell-Douglas* burden shifting analysis. *Edelman v. NYU Langone Health System*, 141 F.4[th] 28, 45 (2d Cir. 2025). The elements of a retaliation claim under the ADEA and NYSHRL are identical. *Craven v. City of New York*, 2023 WL 3097434, at * 8 (S.D.N.Y. Apr. 26, 2023). Such elements include (1) the plaintiff participated in a protected activity; (2) the defendant knew of the protected activity; (3) the plaintiff experienced an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citing *Terry v. Ashcroft*, 336 F.3d 128, 140-41 (2d Cir. 2003)).

Defendant does not move to dismiss the retaliation claims but, rather, argues with regard to Plaintiff's motion seeking to file an amended complaint that Plaintiff has improperly filed as an exhibit to Plaintiff's motion a copy of an administrative decision issued by the State of New York Unemployment Insurance Appeal Board ("NYSUIAB") on November 6, 2024 ("Administrative Decision"),[10] reversing an initial determination rendered by the New York Department of Labor ("DOL") on May 31, 2024, finding Plaintiff was ineligible to receive unemployment benefits because she voluntarily separated from her employment with Defendant without good cause. Defendant's Response at 3-5. According to Defendant, because Defendant has not moved to dismiss Plaintiff's retaliation claims, the Administrative Decision, as well as the newly alleged facts taken from the Administrative Decision and incorporated into the PAC, are unnecessary. *Id*. at 3-4. Defendant further maintains that such facts were known to

---

[10] Filed as Plaintiff's Exh. B (Dkt. 14-4).

Plaintiff when she requested a hearing with the NYSUIAB on August 2, 2024 ("administrative hearing"), before this action was commenced, and thus could have been included in the original Complaint.  *Id*. at 4-5.  Plaintiff also argues that although Plaintiff requested the administrative hearing prior to commencing this action, Plaintiff's testimony at the hearing was not provided until November 26, 2024, more than two months after the action was commenced.[11]  Plaintiff's Reply at 5.

An amended complaint may be filed solely to clarify allegations in the original Complaint.  *See Rich v. Fox News Network, LLC*, 939 F.3d 112, 130 (2d Cir. 2019) (vacating district court's dismissal of action and remanding action to district court to permit plaintiffs to file amended complaint asserting additional facts clarifying claims); *Brook v. Simon & Partners LLP*, 783 Fed.Appx. 13, 18-19 (2d Cir. 2019) (vacating dismissal of complaint for failure to state a claim and remanding to the district court to permit the plaintiff to file an amended complaint because the proposed additional factual allegations could support the plaintiff's theory of recovery).  As a general matter, '[t]he district court has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for abuse of discretion . . . .'"  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (quoting 3 *Moore's Federal Practice* ¶ 15.08 [4], at 15–64 (2d ed. 1992) (footnotes omitted), and citing *Foman v. Davis,* 371 U.S. 178, 182 (1962), and *Evans v. Syracuse City School District,* 704 F.2d 44, 47 (2d Cir. 1983)).  "[A] plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission." *Sacerdote v. New York University*, 9 F.4th

---

[11] It is not clear from the record whether Mr. Fritzson, Plaintiff's counsel, represented Plaintiff at the administrative hearing.

95, 115 (2d Cir. 2021) (citing Fed.R.Civ.P. 15(a)(1)).[12]  Otherwise, a plaintiff needs to seek leave to amend.  "This is a 'liberal' and 'permissive' standard, and the only 'grounds on which denial of leave to amend has long been held proper' are upon a showing of 'undue delay, bad faith, dilatory motive, [or] futility.'"  *Id*. (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).  "[I]n addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)."  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005) (internal citation omitted).

Although in exercising discretion as to whether to grant leave to amend, "the district court is required to heed the command of Rule 15(a) to grant leave to amend 'freely . . . when justice so requires,' " *Ruffolo*, 987 F.2d at 131 (quoting Fed.R.Civ.P. 15(a), and citing *Foman,* 371 U.S. at 182, *Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir. 1990), and 3 *Moore's Federal Practice* ¶ 15.08[4], at 15–65), "[w]here it appears that granting leave to amend is unlikely to be productive ... it is not an abuse of discretion to deny leave to amend.  *Id.* (citing *Foman,* 371 U.S. at 182 (denial not abuse of discretion where amendment would be futile), *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir. 1990) ("where . . . there is no merit in the proposed amendments, leave to amend should be denied"); and *Billard v. Rockwell International Corp.,* 683 F.2d 51, 57 (2d Cir. 1982) (denial not abuse of discretion where plaintiff had had

---

[12] A plaintiff may also amend as a matter of course within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed.R.Civ.P. 15(a)(1)(B).  In the instant case, although Defendant did not file a responsive pleading but, rather, moved on December 2, 2024, to dismiss the Complaint pursuant to Rule 12(b)(6), Plaintiff had until December 23, 2024, *i.e.*, 21 days after service of Defendant's motion, to file an amended Complaint as a matter of course and without leave of court.  Plaintiff, however, did not file an amended complaint within the specified 21 days and, thus, was required to move for leave to amend.

"access to full discovery" in a related case)). *See also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming dismissal of plaintiff's claim for failure to state a claim with prejudice and without leave to replead where even a liberal reading of complaint failed to suggest plaintiff had merely inadequately or inartfully pleaded and plaintiff, speaking through counsel on appeal, suggested no new material that could be pleaded to sufficiently reframe claim, such that repleading would be futile). Nor does a district court abuse its discretion in denying leave to replead where the papers provide "no clue as to how the complaint's deficiencies would be cured." *Noto v. 22nd Century Group, Inc.*, 35 F.4th 95, 107 (2d Cir. 2022).

Here, as discussed above, Discussion, *supra*, at 16, 20, a constructive discharge can be an adverse employment action sufficient to support a retaliation claim. *Van Denburgh*, 2025 WL 2483415, at * 22; *Lonergan-Milligan*, 2018 WL 6605686, at * 5. A plain review of the PAC establishes it is essentially identical to the original Complaint except for the addition of two paragraphs in the factual allegations portion of the PAC, PAC ¶¶ 15-16, and one in the Second Claim pertaining to retaliation. PAC ¶ 28. The contents of these paragraphs track the Administrative Decision's recitation of the facts. Specifically, in the Administrative Decision, as recited in the PAC, after Plaintiff filed her EEOC charge, Decker inquired whether Plaintiff would agree to end the employment discrimination investigation, but when Plaintiff did not immediately agree to do so, Decker raised his voice in anger at Plaintiff. PAC ¶ 15. Following this encounter with Decker, Plaintiff heard Sweat and Taylor discussing Plaintiff's refusal to withdraw her EEOC charge, and Sweat made statements to Taylor that Sweat intended to find Plaintiff's home address and to physically harm Plaintiff, causing Plaintiff to fear for her

personal safety, as well as the safety of her family.  *Id*. ¶ 16.  Plaintiff maintains this conduct led to Plaintiff's constructive discharge.  *Id*. ¶ 28.  Because these allegations which Plaintiff seeks to include in the PAC clarifies the basis for Plaintiff's retaliation claims, particularly the asserted adverse employment action and causal connection between Plaintiff's participating in protected activity by filing the internal complaint and the EEOC charge, and Plaintiff's constructive discharge, Plaintiff's motion should be GRANTED.

### 5.  Dismissal with Prejudice

In the instant case, the problems with Plaintiff's disparate treatment employment discrimination claims based on age and disability, and hostile work environment claims, as pleaded against Defendant, are substantive and thus cannot be cured upon further pleading.  *Ruffolo*, 987 F.2d at 131 (denial of leave to amend is not an abuse of discretion where further pleading is "unlikely to be productive").  With respect to Plaintiff's motion seeking to file an amended complaint, although a COVID-19 viral infection could qualify as a disability under the ADA and NYSHRL where the plaintiff suffers long-lasting and severe symptoms, *Drepaul*, 2024 WL 127403, at *4, here, the PAC contains no new factual allegations establishing Plaintiff's COVID-19 infection was sufficiently severe to qualify as such a disability.  *Noto*, 35 F.4th at 107 (a district court does not abuse its discretion in denying leave to amend where the papers provide "no clue as to how the complaint's deficiencies would be cured.").  Similarly, with regard to Plaintiff's age-based employment discrimination claims, the PAC contains no new allegations that would cure the defects of Plaintiff's disparate treatment claims, nor the

deficiencies relative to Plaintiff's hostile work environment claims.  *Id*.  Accordingly, the

dismissal of such claims should be with prejudice and without leave to replead.


## **CONCLUSION**

Based on the foregoing, Defendant's motion (Dkt. 11) should be GRANTED;

Plaintiff's motion (Dkt. 14), is GRANTED.  Should the District Judge agree with the

recommendation regarding Defendant's motion, Plaintiff should be directed to file her

amended complaint within 30 days of such order adopting this Report and

Recommendation/Decision and Order, from which are deleted Plaintiff's disparate

treatment and hostile work environment claims, as well as her disability-based

employment discrimination claims, but which includes the three additional paragraphs

Plaintiff seeks to assert pertaining to the retaliation claims.

SO ORDERED, as to Plaintiff's motion
for leave to file an amended complaint.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Respectfully submitted, as to Defendant's motion
to dismiss,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      September 26, 2025
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u>

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     September 26, 2025
          Buffalo, New York